UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×
JENNIFER MILLER, MITCHELL MARK, *and* MATRINA
MORRISON,

                                                                           **17 CV 5045**

        *Plaintiffs,*
      *v.*

                                                                       **COMPLAINT**

MERCHANT SOURCE INC., *and* TONI AUGUST, KEITH
VERDEE, *and* GARY BAKER, *individually,*

        *Defendants.*
------------------------------------------------------------------------×

        Plaintiffs Jennifer Miller, Mitchell Mark, and Matrina Morrison, by their counsel, The Harman Firm, LLP, allege for their Complaint against Defendants Merchant Source Inc., Toni August, Keith Verdee, and Gary Baker as follows:

### PRELIMINARY STATEMENT

        1.    Plaintiffs Jennifer Miller, Mitchell Mark, and Matrina Morrison (collectively, "Plaintiffs") seek damages and costs against Defendants Merchant Source Inc. ("Merchant Source"), Toni August, Keith Verdee, and Gary Baker (collectively, "Defendants") for: discriminating against them based on their race (Black) by subjecting them to a hostile work environment and, ultimately, terminating their employments, in violation of Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq*; and retaliating against them for their complaints of discrimination, in violation of Section 1981 and the NYSHRL.

        2.    Plaintiff Miller also seeks damages and costs against Merchant Source and Defendant Verdee for subjecting her to a hostile work environment based on her gender, in violation of the NYSHRL.

1

3. Plaintiff Morrison, individually, also seeks damages and costs against Merchant Source and Gary Baker for discriminating against her based on her familial status by wrongfully terminating her employment, in violation of the NYSHRL.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiffs' claims arising under Section 1981.

5. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiffs' NYSHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

7. Plaintiffs respectfully request a trial before a jury.

## PARTIES

8. Plaintiff Miller, at all times relevant hereto, was and is a resident of Kings County in the State of New York.

9. Plaintiff Mark, at all times relevant hereto, was and is a resident of Queens County in the State of New York.

10. Plaintiff Morrison, at all times relevant hereto, was and is a resident of Queens County in the State of New York.

11. Upon information and belief, at all times relevant hereto, Merchant Source was and is a corporation organized under the laws of the State of New York with offices located at 110 Jericho Turnpike, Floral Park, New York 11001 in Nassau County.

12. Upon information and belief, at all times relevant hereto, Defendant August was and is an employee of Merchant Source and a resident of Queens County in the State of New York.

13. Upon information and belief, at all times relevant hereto, Defendant Verdee was and is an employee of Merchant Source and a resident of Nassau County in the State of New York.

14. Upon information and belief, at all times relevant hereto, Defendant Baker was and is the Chief Financial Officer and co-owner of Merchant Source and a resident of the State of New York.

## STATEMENT OF FACTS

15. Merchant Source hired Ms. Miller, Mr. Mark, and Ms. Morrison as Sales Representatives on October 24, 2016, January 16, 2017, and April 3, 2017, respectively.

16. Plaintiffs and Merchant Source's other Sales Representatives worked without privacy. All Sales Representatives worked in a single large room surrounded by the offices of various Merchant Source managers and executives, who often left their doors open. As a result, as long as Plaintiffs were in the Merchant Source office, they witnessed all comments and conduct.

17. Immediately upon beginning work at Merchant Source, Plaintiffs observed that Merchant Source's management—composed entirely of non-Black individuals—was openly discriminatory towards Merchant Source's racial minority and/or female employees.

18. Merchant Source managers made overtly racist remarks about employees and public figures of color, made inappropriate and unwanted sexual advances on female Merchant Source employees, and subjected Sales Representatives—the vast majority of whom are Black—to dehumanizing rules which were not applied to their white counterparts.

19. Defendants Toni August and Keith Verdee, both of whom are white Merchant Source Managers, regularly made racially discriminatory comments about employees of color.

20. Ms. August and Mr. Verdee frequently made racist remarks about Vlad Valentine, a Black Sales Representative of Haitian descent, to Merchant Source's other Sales Representatives, such as: "What is he doing here?" and "What fucking language is he speaking [in reference to Mr. Valentine's speaking Haitian Creole]? It's disgusting. Is it African?" Ms. August and Mr. Verdee derisively called Mr. Valentine "so stupid" for speaking Creole and laughed with each other about their disparaging remarks and racist "jokes."

21. These comments were extremely offensive to Plaintiffs, especially because Haiti is a predominantly Black country with a unique history of resisting European rule.

22. Ms. August and Mr. Verdee openly displayed their belief in false and offensive racial stereotypes in the workplace.

23. During the week of February 13, 2017, Ms. August asked Ms. Miller if Ms. Miller knew anybody who would murder Ms. August's ex-husband, simply because Ms. Miller is Black and from Brooklyn.

24. Horrified, Ms. Miller said she absolutely did not know anyone who would murder Ms. August's ex-husband.

25. Ms. August then asked if, instead, Ms. Miller would steal Ms. August's ex-husband's vehicle and "hide it" in Brooklyn.

26.     Ms. August's comments, which are horrific in themselves, signal her racially discriminatory belief that Black people are interested in and predisposed to criminal activity. These comments also demonstrate a brazen contempt for the law.

27.     Mr. Verdee openly engaged in race-based stereotyping and harassment, as well.

28.     Mr. Verdee stated, in reference to Indian and Middle Eastern Merchant Source employees and customers, that he refused to work with "terrorists."

29.     Mr. Verdee told Middle Eastern Merchant Source employees that they should "go back to their country."

30.     These comments were extremely offensive to Plaintiffs, as Plaintiffs and the Indian and Middle Eastern Merchant Source employees are members of racial and ethnic minority groups.

31.     Mr. Verdee referred to rap music as "nigger music."

32.     Mr. Verdee asked Sheri Spicer, a Black Sales Representative, "What's up with you guys [i.e., Black people] touching your hair.  Is it a Black thing?"

33.     Mr. Verdee frequently addressed the Black Sales Representatives as "You people," and made comments like, "You people are so fucking stupid."

34.     Ms. August made many other racist comments, as well.

35.     When Michelle or Barack Obama appeared on the television located in the Sales Representatives' workspace, Ms. August would make highly offensive comments, calling Ms. Obama a "monkey," a "monkey cunt bitch," and "the ugliest black bitch [Ms. August] ever saw," and referring to President Obama as "uneducated" and a "disgusting monkey."

36.     Ms. Miller, Mr. Mark, and Ms. Morrison were deeply offended and upset by these remarks and confronted Ms. August about her discriminatory behavior.

5

37. In response to Plaintiffs' complaints, Ms. August only laughed and said that she "[didn't] give a fuck," stating that, while she held racist views against Black people, she was also "racist against everybody" and that she "hate[s] Indian people the most"—as though this somehow made her overt racism less offensive or inappropriate for the workplace.

38. Further, Ms. August never made derogatory comments about white people; in reality, Ms. August's racism "against everybody" extended only to people of color.

39. On a trip with members of Merchant Source management from January 13 to January 15, 2017, Mr. Verdee sexually harassed Ms. Miller.

40. Mr. Verdee asked Ms. Miller to be his dinner date, which Ms. Miller declined; she unequivocally rejected Mr. Verdee, telling him that she was in a relationship, that being Mr. Verdee's date would be inappropriate, and that she was uncomfortable with the request.

41. Despite Ms. Miller's rejection and clear discomfort, Mr. Verdee nevertheless continued to make advances on her.

42. Mr. Verdee talked to Ms. Miller about going to strip clubs and described spending thousands of dollars at these clubs and objectifying young women, despite Ms. Miller's palpable discomfort with the conversation.

43. Late in the evening on January 14, 2017, Mr. Verdee inappropriately commented on Ms. Miller's appearance, telling her that she looked "very nice" in a suggestive manner and then asking her, "Do you want to come to my room?"

44. When Ms. Miller again rejected Mr. Verdee and told him that she refused to come to his room, he attempted to pass off his sexual harassment as a joke, telling Ms. Miller, "I'm just playing."

45. Nor was Mr. Verdee the only Merchant Source employee who sexually harassed Ms. Miller.

46. On March 20, 2017, in an attempt to anticipate a police press release published that same day, Anthony DeLillo, Ms. Miller's team leader and supervisor, told Ms. Miller he had exposed his penis to a random woman while he was driving on a Long Island turnpike, for which he had been arrested.

47. Ms. Miller was extremely uncomfortable hearing about the incident.

48. Mr. DeLillo made discriminatory, inappropriate comments to Ms. Morrison, as well.

49. After a company training, Mr. DeLillo called Ms. Morrison to his office, simply to tell her that, the entire time that he had been conducting the Sales Representatives' supposed training, he had been "staring at [Ms. Spicer]" and wondering "if plucking chin hairs was a African-American thing, or do all women do that?"

50. Ms. Morrison was offended by these invasive, inappropriate questions, as well as Mr. Delillo's demeaning and repulsed tone.

51. Merchant Source subjected Black Sales Representatives, including Plaintiffs, to dehumanizing rules that did not apply to their white counterparts.

52. Black Sales Representatives were required to adhere to a separate dress code, which prohibited only Black employees from wearing sweaters or hooded sweatshirts; were not allowed to use the bathroom during certain hours; could not eat food at their desks; were not allowed to order food; and were required to stand and hunch over their desks to work, rather than sitting, whenever Merchant Source management decided that they were too "low-energy."

7

53. Black Sales Representatives were only allotted two 10- to 15-minute breaks outside of their lunch break per day, which were not to be taken before 11:00 a.m., between 2:00 p.m. and 3:00 p.m., or between 5:00 p.m. and 5:30pm.

54. Further, Black Sales Representatives' activity on breaks was closely scrutinized.

55. In early May 2017, Mr. Verdee saw Ms. Morrison eating an apple outside the office on her 10-minute break and aggressively asked her, "What the fuck? A whole hour for lunch is not good enough for you? You are still eating?"

56. While Merchant Source claims that it applied these rules to all Sales Representatives, Plaintiffs never witnessed Merchant Source enforce these rules against its few white Sales Representatives.

57. For example, Michael O'Neal, a white Sales Representative, was allowed to take multiple 15- to 25-minute breaks at any time during the day, in contrast to the highly restrictive break policy for Black employees.

58. Merchant Source allowed Mr. O'Neal to miss a mandatory training because he had "softball practice," whereas Merchant Source refused to excuse Ms. Morrison from the training so that she could take care of her two-year-old son.

59. Mr. O'Neal was also allowed to wear a sweater with inappropriate graphics to work, whereas Mr. Valentine was prohibited from wearing a professional, business casual V-neck sweater.

60. On one occasion, when Ms. Spicer went to the bathroom, Ms. August yelled, "Who does that Black bitch think she is?" and "I'll fuck that Black bitch up. She doesn't know who she's fucking with."

61. A white team leader, Steve Mann, defended Ms. Spicer, to which Ms. August angrily responded, "Whose side are you on?" implying that race-based loyalty was expected in the Merchant Source office.

62. After this incident, Ms. August regularly used the racist epithet "Black bitch" whenever referring to Ms. Spicer, which she frequently did in Plaintiffs' presences.

63. On April 6, 2017, Ms. August called Ms. Morrison into her office to speak privately about her experience at Merchant Source.

64. When Ms. Morrison began to describe the ongoing discrimination at Merchant Source, Ms. August interrupted her and told her to "start getting used to not giving a shit about people's feelings" and that Ms. Morrison was "only there to make 'fuck you' money."

65. In late April 2017, Black Merchant Source employees—including Ms. Miller, Mr. Mark, Ms. Morrison, and Malik Harris—began to communicate with each other about the ongoing race discrimination and harassment in an electronic group chat.

66. Merchant Source CFO and co-owner Gary Baker held one-on-one meetings with Ms. Miller, Ms. Morrison, and Mr. Harris after he learned of and obtained a copy of the group chat.

67. In these meetings, Mr. Baker asked Ms. Miller, Ms. Morrison, and Mr. Harris if they thought they were treated "inappropriately" and if they thought Mr. Baker was a "slave master."

68. Ms. Miller, Ms. Morrison, and Mr. Harris replied that they were frustrated with management's overt racism—racism that was further exemplified by Mr. Baker's own comment about being a "slave master"—and the discriminatory application of policies, such as Merchant Source's refusal to allow Black employees to order food to the office.

69. Ms. Miller, Ms. Morrison, and Mr. Harris also complained that the racism was affecting their ability to make sales and perform their job duties.

70. Mr. Baker's "solution" to these complaints of race discrimination was to talk with Ms. August and Mr. Verdee and instruct them to let all lower-level staff order breakfast.

71. Even this insufficient response only lasted about one week; Ms. August complained that the office had become "too boring" and began to engage in her typical discriminatory and harassing behavior once more.

72. On May 10, 2017, Mr. Mann held a meeting with various Merchant Source employees, during which staff were instructed to anonymously write down their top complaints about working at Merchant Source.

73. Mr. Mann then read these complaints, which largely concerned Merchant Source management's overt racism, out loud.

74. Mr. Mann told the group that he agreed that Sales Representatives were "being mistreated because of [their] race," but continued, "But fuck that. We're here to make money, so don't let them fuck with your attitude."

75. Nothing was done to address the blatant racism, and the discrimination and harassment, which was already interfering with Plaintiffs' job performance, continued.

76. After that meeting, Merchant Source began to retaliate against the Sales Representatives and attempted to prevent them from complaining further or speaking to each other about their complaints and dissatisfaction in the workplace.

77. Ms. August chastised Ms. Morrison and Ms. Miller for going to the bathroom together during breaks, asking "Why the fuck do you have to go to the bathroom together?" and

subsequently denied them permission to use the restroom, saying, "You're going to have to hold it."

78. On Good Friday, many Sales Representatives requested in writing that the office be closed early for the holiday.

79. Upset that the employees communicated together and made the request, management forced employees to stay late that day, rather than leave early, solely in retaliation for their request.

80. Shortly after Ms. Miller, Mr. Mitch, and Ms. Morrison had "anonymously" complained about Defendants' racism, Mr. Baker separately called Ms. Miller, Mr. Mitch, and Ms. Morrison into his office on May 18, 2017, May 18, 2017, and May 26, 2017, respectively.

81. Mr. Baker told Ms. Miller, Mr. Mitch, and Ms. Morrison, individually, that their employments were terminated, explaining only that "there are a lot of changes taking place within the company."

82. Mr. Baker made clear that there was no performance-based reason for the terminations, stating that it had been a "pleasure" to work with Ms. Miller, Mr. Mitch, and Ms. Morrison, that they "did a great job," and that he would even write them letters of recommendation, but that their time at Merchant Source was "finished."

83. Further, when terminating Ms. Morrison, Mr. Baker told her that she was "not being smart putting [her] son before Merchant Source and [her] opportunity to make money" and commented, while walking her out of the office, "Maybe in the future I will reconsider hiring women with children, because this has been an inconvenience for my business."

84. Only months later, in a lawyer's letter, did Plaintiffs learn that they were ostensibly terminated for "failing to generate sufficient sales revenue and violating numerous Merchant Source policies."

85. These reasons are pure pretext. Defendants never issued Plaintiffs any warnings or write-ups or issue them any counselling.

86. Moreover, non-Black employees frequently violated Merchant Source's so-called "policies" without rebuke.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### Hostile Work Environment Based on Race in Violation of Section 1981
### (All Named Plaintiffs; Against All Named Defendants)

87. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 86 with the same force as though separately alleged herein.

88. Section 1981 prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race.

89. Defendants discriminated against Plaintiffs based on their race by subjecting them to a hostile work environment, including offensive racial comments and discriminatory policies and procedures.

90. As such, Defendants have violated Section 1981.

91. As a direct and proximate consequence of Defendants' race discrimination, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

92. Defendants' discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants.

## SECOND CAUSE OF ACTION
### Hostile Work Environment Based on Race in Violation of the NYSHRL
### (All Named Plaintiffs; Against All Named Defendants)

93. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 92 with the same force as though separately alleged herein.

94. The NYSHRL prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race.

95. Defendants discriminated against Plaintiffs based on their race by subjecting them to a hostile work environment, including offensive racial comments and discriminatory policies and procedures.

96. As such, Defendants have violated the NYSHRL.

97. As a direct and proximate consequence of Defendants' race discrimination, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

98. Defendants' discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants.

## THIRD CAUSE OF ACTION
### Hostile Work Environment Based on Gender in Violation of the NYSHRL
### (Plaintiff Miller; Against Defendants Merchant Source and Verdee)

99. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 98 with the same force as though separately alleged herein.

100. The NYSHRL prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of gender.

101. Defendant Merchant Source and Defendant Verdee discriminated against Plaintiff Miller based on her gender by subjecting her to a hostile work environment, including sexual harassment.

102. As such, Defendant Merchant Source and Defendant Verdee have violated the NYSHRL.

103. As a direct and proximate consequence of Defendant Merchant Source and Defendant Verdee gender discrimination, Plaintiff Miller has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

104. Defendant Merchant Source's and Defendant Verdee's discriminatory treatment of Plaintiff Miller was willful and in reckless disregard of Plaintiff Miller's protected rights. Accordingly, Plaintiff Miller is entitled to an award of punitive damages against Defendant Merchant Source and Defendant Verdee.

### FOURTH CAUSE OF ACTION
### Unlawful Termination Based on Race in Violation of Section 1981
### (All Named Plaintiffs; Against All Named Defendants)

105. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 104 with the same force as though separately alleged herein.

106. Section 1981 prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race.

107. Defendants discriminated against Plaintiffs based on their race by terminating their employment because of their race.

108. As such, Defendants have violated Section 1981.

109. As a direct and proximate consequence of Defendants' race discrimination, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

110. Defendants' discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants.

## FIFTH CAUSE OF ACTION
### Unlawful Termination Based on Race in Violation of the NYSHRL
### (All Named Plaintiffs; Against All Named Defendants)

111. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 110 with the same force as though separately alleged herein.

112. The NYSHRL prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race.

113. Defendants discriminated against Plaintiffs based on their race by terminating their employment because of their race.

114. As such, Defendants have violated the NYSHRL.

115. As a direct and proximate consequence of Defendants' race discrimination, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

116. Defendants' discriminatory treatment of Plaintiffs was willful and in reckless disregard of Plaintiffs' protected rights. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants.

## SIXTH CAUSE OF ACTION
### Unlawful Termination Based on Familial Status in Violation of the NYSHRL
### (Plaintiff Morrison; Against Defendants Merchant Source and Baker)

117. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 116 with the same force as though separately alleged herein.

118. The NYSHRL prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of familial status, defined as "any person who is pregnant or has a child."

119. Defendants Merchant Source and Baker discriminated against Plaintiff Morrison based on her familial status by terminating her employment because she has a child.

120. As such, Defendants Merchant Source and Baker have violated the NYSHRL.

121. As a direct and proximate consequence of Defendants Merchant Source and Baker's familial status discrimination, Plaintiff Morrison has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

122. Defendants Merchant Source and Baker's discriminatory treatment of Plaintiff Morrison was willful and in reckless disregard of Plaintiff Morrison's protected rights. Accordingly, Plaintiff Morrison is entitled to an award of punitive damages against Defendants Merchant Source and Baker.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of Section 1981
### (All Named Plaintiffs; Against All Named Defendants)

123. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 122 with the same force as though separately alleged herein.

124. Section 1981 prohibits an employer from retaliating against an employee for engaging in protected activity under Section 1981.

125. Plaintiffs engaged in protected activity under Section 1981 when they properly complained to Defendants about race discrimination unlawful under Section 1981.

126. Defendants retaliated against Plaintiffs by subjecting them to further discrimination and harassment, refusing to reprimand the discriminatory behavior, and, ultimately, terminating their employments.

127. As such, Defendants have violated Section 1981.

128. As a direct and proximate consequence of Defendants' retaliation, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of the NYSHRL**
**(All Named Plaintiffs; Against All Named Defendants)**

129. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 128 with the same force as though separately alleged herein.

130. The NYSHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYSHRL.

131. Plaintiffs engaged in protected activity under the NYSHRL when they properly complained to Defendants about race discrimination unlawful under the NYSHRL.

132. Defendants retaliated against Plaintiffs by subjecting them to further discrimination and harassment, refusing to reprimand the discriminatory behavior, and, ultimately, terminating their employments.

133. As such, Defendants have violated the NYSHRL.

134. As a direct and proximate consequence of Defendants' retaliation, Plaintiffs have suffered, and continue to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A. For the first cause of action, all damages to be determined at trial;

B. For the second cause of action, all damages to be determined at trial;

C. For the third cause of action, all damages to be determined at trial;

D. For the fourth cause of action, all damages to be determined at trial;

E. For the fifth cause of action, all damages to be determined at trial;

F. For the sixth cause of action, all damages to be determined at trial;

G. For the seventh cause of action, all damages to be determined at trial;

H. For the eighth cause of action, all damages to be determined at trial; and

I. For such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         August 25, 2017

By: *[signature]*

Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiffs*